UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JASON McENTIRE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:07CV00047 RWS |
| | ) | |
| JAMES PURKETT, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

Petitioner Jason McEntire seeks a writ of habeas corpus [#1] pursuant to 28 U.S.C. § 2254. He alleges six grounds for relief. This matter was referred to United States Magistrate Judge Mary Ann L. Medler for a Report and Recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b). On August 1, 2007, Judge Medler filed her recommendation that McEntire's habeas petition should be denied.

McEntire filed objections to Judge Medler's recommendation. I have conducted a *de novo* review of all matters relevant to McEntire's habeas petition. After careful consideration, I will adopt and sustain the thorough reasoning of Judge Medler.

**BACKGROUND**:

The facts as summarized in the Report and Recommendation are as follows:

McEntire was charged with Class A felony assault in the first degree for knowingly causing serious injury to Justin Wills in Washington County, Missouri.

The testimony at McEntire's state court trial is described by the Missouri Appellate Court as follows:

[O]n March 8, 2002, Joshua Wright hosted a party at his house. Justin Wills ("Victim") and his friends planned to go to the party, however, when they drove by Joshua's house, Victim's friends changed their minds and decided not to go in. Instead, Victim and his friends went to another house where they ate pizza and drank beer. Later that night, Victim decided to go back to Joshua's party alone.

Victim arrived at the party at 12:30 a.m. and proceeded directly to the restroom. When he came out, the high school aged guests asked Victim who he was and where he was from. One guest told Victim that he needed to "leave or get [his] face rearranged." Victim left the house and went back to his car in the driveway. Victim's driver's side door was broken and had to be opened from the passenger's side. Accordingly, Victim got in the passenger side of his car, opened the driver's side door and got out of the car to walk around to the driver's side. As he got out of the passenger's side, Defendant struck Victim in the right eye. The impact caused Victim to fall down and, when he tried to get up, Defendant struck him again. Victim ran down the street to escape Defendant. However, Victim slipped on wet pavement and Defendant proceeded to kick and hit Victim repeatedly in his face and ribs.

Several high school students who were at the party witnessed the attack. One girl drove down the street to Victim and Defendant and pulled Defendant off Victim. The girl helped Victim off the ground and, when she saw that there was blood all over Victim's face, she invited Victim back to Joshua's house to get cleaned up. Having seen Defendant run into Joshua's house, Victim refused to go back into the house. Victim asked if someone would drive him home because he was in pain and could not see out of his right eye. When no one agreed to drive him home, Victim got in his car, held his eye and began to drive himself home. While driving in the rain, Victim lost control of the car and ran off the road.

When Victim finally arrived home, he reported the evening's events to his mother and went to sleep. When he awoke, Victim noticed that the pain had worsened and agreed to go to the hospital. At the hospital, Victim underwent CT scans which showed trauma and fractures to the right side of Victim's face.

After he was released from the hospital, Victim went to the Sheriff's Department to report the assault. In light of the fact that Victim's face was so swollen that his right eye was completely closed, Victim could not see well enough to write. As a result, a deputy had to write Victim's statement for him. Based on the information in the report, the deputy began an investigation which resulted in the names of several people who were at the party, several of whom told the deputy that Defendant had beaten Victim.

> ... Dr. Ralph Templin, the radiologist who interpreted Victim's CT scan [] testified that the scan indicated that Victim suffered a "blow out injury" which is where the orbit, or the boney floor of the eye, is fractured and pushed down into the sinus. Tests further indicated that Victim suffered a tripod fracture of his cheek bone. Dr. Templin testified that Victim had soft tissue protruding out of the orbit and into the sinus which can become trapped and cause impaired vision and other problems. Dr. Templin further explained that, without treatment, Victim could have experienced protected or permanent impairment of the eye, deformity, and other complications, and even with treatment, Victim is at risk for substantial disfigurement and protracted loss or impairment.

McEntire also testified at his trial. The jury found McEntire guilty of first degree assault and the trial court sentenced him to ten years in the Missouri Department of Corrections. McEntire filed an appeal. On February 22, 2005, the judgment was affirmed.

On March 18, 2005, McEntire filed a *pro se* post-conviction relief motion. Appointed counsel filed an amended motion. The motion court denied McEntire relief and he filed an appeal of the motion court's decision. On June 30, 2006, the Missouri Court of Appeals affirmed the decision of the motion court. The mandate issued on November 6, 2006.

McEntire filed this § 2254 Petition on January 11, 2007. In his petition, McEntire raises the following grounds for relief:

> (1) The trial court erred in denying McEntire's motion for judgment of acquittal at the close of all evidence because the evidence at McEntire's trial was insufficient to convict him;
>
> (2) The trial court erred in allowing Dr. Templin to testify that the victim's injuries were serious;
>
> (3) McEntire received ineffective assistance of counsel because trial counsel failed to call Carrie McGee to testify;
>
> (4) McEntire received ineffective assistance of counsel because appellate counsel failed to argue that the bailiff had improper contact with the jurors;
>
> (5) McEntire received ineffective assistance of counsel because trial counsel

acquiesced to the judge's decision not to define the word "knowingly" for the jury;

(6) McEntire received ineffective assistance of counsel because trial counsel failed to request a second-degree assault instruction.

On March 16, 2007, Respondent James Purkett filed his Response to my Order to Show Cause why relief shouldn't be granted. On August 1, 2007, Judge Medler filed her Report and Recommendation that McEntire's habeas petition should be denied. McEntire requested and was granted an extension of time to file objections to the Report and Recommendation ("Objections"). On September 7, 2007, McEntire filed his Objections.

**LEGAL STANDARDS:**

In her Report and Recommendation, Judge Medler included a thorough analysis of the applicable habeas legal standards. Judge Medler's analysis is incorporated.

In conducting habeas review pursuant to 28 U.S.C. § 2254, federal courts are limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or . . . resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1).

The Supreme Court has held that:

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

Further, "[i]n a [habeas corpus] proceeding . . . a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); see Boyd v. Minn., 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001); see 28 U.S.C. § 2254(e)(1). For purposes of habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003); see also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert denied, 543 U.S. 1027 (2004).

Additionally, the United States Supreme Court, in Strickland v. Washington, 466 U.S. 668 (1984), addressed habeas claims for ineffective assistance of counsel. Strickland, held:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.
> . . .
> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or

adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

. . .

[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 466 U.S. 668, 687-90 (internal citations omitted).

## ANALYSIS:

### *McEntire's First Ground For Habeas Relief:*

McEntire's first ground for habeas relief alleges that there was insufficient evidence to support a conviction for first-degree assault.

Missouri law requires the following for a conviction of first-degree assault:

1. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person.

2. Assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony.

Mo. Rev. Stat. § 565.050. "Serious physical injury" is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." Mo. Rev. Stat. 565.002(6).

McEntire alleges that there was insufficient evidence to support a finding of "serious physical injury" under Missouri law. Specifically, McEntire alleges that there was no evidence of a "substantial risk of death" or "serious disfigurement." McEntire contends that there was no evidence of actual "protracted loss" or "impairment of the function of any part of the [victim's] body," other than testimony indicating a risk of such impairment.

In addressing McEntire's first ground for habeas relief, the Missouri appellate court reviewed all "evidence and inferences reasonably drawn from the evidence in the light most favorable to the verdict, and disregard[ed] all contrary evidence and inferences." This standard is consistent with federal law. The United States Supreme Court has held that "a claim that evidence is insufficient to support a conviction as a matter of due process depends on whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Wright v. West, 505 U.S. 277, 283-84 (1992) (internal citations and quotations omitted; emphasis in the original). With respect to McEntire's first ground for habeas relief, these two standards of review are identical. Additionally, McEntire has not cited any United States Supreme Court case, with "materially indistinguishable facts," which found insufficient evidence for a conviction. Williams, 529 U.S. at 412-13. Therefore, I find that the state court's decision was not "contrary to . . . clearly established Federal law, as determined by the [United States] Supreme Court." 28 U.S.C. § 2254(d)(1).

McEntire also alleges that the Missouri appellate court's finding of serious physical injury was an unreasonable determination of the facts in light of the evidence.

The Missouri appellate court's finding of serious physical injury was not an "unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(1). The record contained evidence that the assault caused serious disfigurement, because the victim suffered substantial facial fractures. The record also contained evidence that the assault caused protracted loss or impairment, because the victim was unable to open his eye due to severe swelling and was unable to use his eye during surgical reconstruction of his facial fractures. While the swelling and fractures did heal, Missouri law does not require the disfigurement to be permanent to constitute a serious disfigurement. State v. Immekus, 28 S.W. 3d 421, 427 (Mo. Ct. App. 2000) (noting swollen eyes, shaved eyebrows, and cutting a victim's long hair so that it was 1 ½ inches long could each be considered serious disfigurements).

McEntire's Objections related to his first ground for habeas relief merely reiterate the arguments presented in his original habeas writ.

The decision of the Missouri appellate court in regard to McEntire's first ground for habeas relief is not contrary to federal law and is a reasonable application of federal law. McEntire's first ground for habeas relief is without merit and will be denied.

### *McEntire's Second Ground For Habeas Relief:*

McEntire's second ground for habeas relief alleges that the trial court abused its discretion in allowing a medical expert, Dr. Templin, to testify to the legal conclusion that the victim's injuries were "serious."

At trial, the prosecutor asked Dr. Templin whether the victim's eye injuries were

considered a serious injury. McEntire objected to this question, stating that the term called for a legal conclusion. The trial judge then prompted the witness to specify that he was testifying to a medical conclusion and not a legal conclusion. After clarifying that the witness was using the term for its medical significance, the trial judge allowed the testimony.

The Missouri appellate court addressed McEntire's second ground for habeas relief and held that "in Missouri, an expert may opine on an ultimate issue in a criminal case as long as he does not give an opinion about that specific defendant's guilt or innocence." I find that this standard is not "contrary to . . . clearly established Federal law, as determined by the [United States] Supreme Court." 28 U.S.C. § 2254(d)(1). McEntire has not cited any contrary law, nor has McEntire cited any United States Supreme Court cases with "materially indistinguishable facts" that were decided contrary to the state court on this question of law. Williams, 529 U.S. at 412-13.

Moreover, while not determinative, Eighth Circuit law concurs with the standard applied by the Missouri appellate court. In United States v. Two Eagle, 318 F.3d 785 (8th Cir. 2003), the Court held:

> Admission or exclusion of expert testimony is a matter within the sound judicial discretion of the trial court, and the trial court's decision should not be reversed unless found to be manifestly erroneous. This court has repeatedly held that an expert, as distinguished from a lay witness, may express his opinion on the ultimate jury question. Furthermore, testimony is not defective merely because it utilized the words of the legal standard. Commonly used words and their plain meaning often match their legal meaning. The term serious bodily injury . . . contains words that have overlapping legally and medically descriptive meanings. . . . Medical and legal terms often overlap, and a medical expert cannot be expected to use different words merely to avoid this specific problem.

United States v. Two Eagle, 318 F.3d 785, 792-793 (8th Cir. 2003) (internal quotations and citations omitted).

The Missouri appellate court's decision that the term "serious" was used for its medical significance, was not an "unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d)(1). Dr. Templin testified in the capacity of a medical expert familiar with the victim's physical state. In this context, Dr. Templin's use of the term "serious" expressed his expert opinion on the severity of the victim's injuries. Dr. Templin in no way expressed a view on McEntire's actual guilt or innocence.

Additionally, federal courts may not grant habeas relief for state court's evidentiary rulings unless they "infringe[] upon a specific constitutional protection or [are] so prejudicial that [they] amount[] to a denial of due process." Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (internal quotations omitted). I find that McEntire has not shown that the admission of Dr. Templin's testimony infringed upon McEntire's constitutional rights. Furthermore, because the term "serious" was used in its medical sense, I find that the admission of this evidence was not so prejudicial that it amounted to a denial of due process.

In his Objections, McEntire alleges that the Report and Recommendation erred by incorrectly using Eighth Circuit standards, as opposed to clearly established federal law *as determined by* the United States Supreme Court. However, as previously noted, McEntire does not cite any contrary United States Supreme Court law. Moreover, the Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871 (8th Cir. 1999).

The decision of the Missouri appellate court in regard to McEntire's second ground for habeas relief is not contrary to federal law and is a reasonable application of federal law.

McEntire's second ground for habeas relief is without merit and will be denied.

### *McEntire's Third & Fourth Ground For Habeas Relief:*

McEntire's third and fourth grounds for habeas relief allege ineffective assistance of counsel for failing to call a specific witness to testify, and for failing to argue, upon appeal, improper contact between the bailiff and the jurors.

In his Objections, McEntire concedes that his third and fourth grounds for habeas relief were abandoned by his post-conviction relief ("PCR") counsel upon appeal. However, McEntire alleges that his PCR attorney failed to appeal these grounds without his consent or waiver. McEntire asks this Court to address the issue of whether abandonment of claims by State PCR counsel establishes cause to excuse a procedural default in federal habeas proceedings.

By alleging that his state PCR counsel erred in not appealing these grounds for relief, McEntire is merely arguing ineffective assistance of post-conviction counsel. McEntire cites Missouri case law, Russell v. State, 39 S.W.3d 52, 55 (Mo. App. E.D. 2001), for the proposition that claims of abandonment by PCR counsel may be grounds for an independent motion.

McEntire's arguments are without merit. The law is clear on this point, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i).

McEntire's third and fourth grounds for habeas relief are procedurally barred and will be denied.

### *McEntire's Fifth Ground For Habeas Relief:*

McEntire's fifth ground for habeas relief alleges that his counsel was ineffective for not

requesting that the term "knowingly" be defined to the jury.

Jury Instruction #5 included the term "knowingly" as an element of the charge against McEntire. During trial, McEntire's counsel did not instruct the jury as to the definition of this term. Additionally, after the case was submitted, the jury sent a note to the judge asking for clarification on the definition of "knowingly." At this point, McEntire's counsel did not request this term to be defined to the jury.

In addressing McEntire's fifth ground for habeas relief, the Missouri appellate court adopted the findings of the motion court. The Missouri appellate court applied the two-prong test set forth in Strickland. Strickland is the current United States Supreme Court precedent for ineffective assistance of counsel. Therefore, I find that the state court's decision was not "contrary to . . . clearly established Federal law, as determined by the [United States] Supreme Court." 28 U.S.C. § 2254(d)(1).

In applying Strickland, the motion court noted that "[i]t would seem reasonable trial strategy for trial counsel not to draw overt attention to the term 'knowingly' in the jury instructions when the defense is that he did not do the crime." The motion court noted "the same holds true" for not requesting a definition when the jury asked for clarification on this term, especially when "[c]ounsel would not be allowed to argue the difference between 'knowingly' and 'recklessly' at that time." Additionally, the motion court noted that McEntire had "not presented any case law that would allow for the re-instruction of the jury after the case has been submitted to it." Finally, the court held that McEntire's "claims that the jury would not have found him guilty . . . had they been given a definition of 'knowingly' is [a] mere conclusion that is not supported by the evidence . . .."

I find that the motion court reasonably applied the standard set forth in Strickland. The motion court first noted that McEntire's counsel was reasonable in view of the trial strategy that McEntire did not commit the offense. Moreover, the motion court also noted that McEntire's counsel was acting reasonably because at this stage of the proceedings McEntire's counsel was not able to argue the difference between the terms "knowingly" and "recklessly." Furthermore, because the motion court found McEntire's counsel reasonable, the motion court was not required to examine Strickland's prejudice prong.

In a habeas claim for ineffective assistance of counsel, there is a "'strong presumption that . . . counsel's actions constituted reasonable trial strategy.'" Walls v. Bowersox, 151 F.3d 827, 834 (8th Cir. 1998) (quoting Snell v. Lockhart, 14 F.3d 1289, 1301 (8th Cir. 1994)). Moreover, where a habeas petitioner has alleged that his counsel had failed to act in some manner which would have been inconsistent with counsel's trial strategy, the Eighth Circuit has held that the petitioner did not overcome this presumption. See Wing v. Sargent, 940 F.2d 1189, 1191-92 (8th Cir. 1991). McEntire's trial defense was that he did not commit the assault. As noted by the motion court, drawing overt attention to the term "knowingly" would be inconsistent with this defense.

McEntire's Objections merely reiterate the arguments presented in his original habeas writ.

Therefore, I find that the decision of the Missouri appellate court in regard to McEntire's fifth ground for habeas relief is not contrary to federal law and is a reasonable application of federal law. McEntire's fifth ground for habeas relief is without merit and will be denied.

### *McEntire's Sixth Ground For Habeas Relief:*

McEntire's sixth ground for habeas relief alleges that his counsel was ineffective for not requesting a second-degree assault instruction. Additionally, McEntire contends that the motion court was in error when it ruled on this sixth ground without conducting an evidentiary hearing.

In addressing McEntire's sixth ground for habeas relief, the Missouri appellate court adopted the findings of the motion court. In addressing McEntire's claims of ineffective assistance of counsel, the motion court applied the two-prong test set forth in Strickland. Because Strickland is the current United States Supreme Court precedent for ineffective assistance of counsel, I find that the state court's decision was not "contrary to . . . clearly established Federal law, as determined by the [United States] Supreme Court." 28 U.S.C. § 2254(d)(1).

In applying Strickland, the motion court held that counsel's actions were reasonable because, "the requesting [of] a lesser-included instruction on Assault Second would lead to an argument contrary to the defense presented[ed]." The motion court did not address the prejudice prong of Strickland.

I find that the motion court reasonably applied the standard set forth in Strickland. McEntire's claim at trial was that he was not present at the time the offense was committed. Any instruction of a lesser offense, would be inconsistent with this defense. Furthermore, after finding McEntire's counsel reasonable, the motion court was not required to examine Strickland's prejudice prong.

Federal law also supports the reasonableness of McEntire's trial counsel. The Eighth Circuit held in Neal v. Acevedo, 114 F.3d 803, 806 (8th Cir. 1997), that it is reasonable trial

strategy to not request a lesser offense instruction, if that instruction would be inconsistent to the defense presented. Furthermore, as previously noted, there is a "'strong presumption that . . . counsel's actions constituted reasonable trial strategy.'" Walls, 151 F.3d at 834 (quoting Snell, 14 F.3d at 1301).

McEntire further alleges that the motion court erred by not conducting an evidentiary hearing for McEntire's sixth ground for habeas relief. In support of this allegation, McEntire alleges that he was not aware of any trial strategy that would explain counsel's failure to request instructions for the lesser offense. Moreover, McEntire alleges that no reasonable trial strategy would justify not asking for a lesser offense instruction. Finally, McEntire alleges that no reasonably competent trial counsel would act in this manner.

I find that the motion court's decision to not hold an evidentiary hearing for McEntire's sixth ground for habeas relief was not error. Here, federal law is helpful to determining the reasonableness of the state court's decision to not hold an evidentiary hearing. See Atley, 191 F.3d at 871. Federal law states that "[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether the hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 127 S. Ct. 1933, 1940 (2007). As discussed above, not requesting instructions for a lesser offense is reasonable trial strategy when inconsistent with the defense presented at trial. Therefore, McEntire's allegations to the contrary are without merit.

Finally, with respect to McEntire's sixth ground for relief, his Objections merely reiterate the arguments presented in his original habeas writ. Therefore, I find that the decision of the Missouri appellate court in regard to McEntire's sixth ground for habeas relief is not contrary to

federal law and is a reasonable application of federal law. I further find that the Missouri appellate court's factual determinations were reasonable.

McEntire's sixth ground for habeas relief is without merit and will be denied.

*Certificate of Appealability*

McEntire urges this Court to grant a certificate of appealability.

28 U.S.C § 2253 states that

[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court [and] . . . [a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

In order to make a "substantial showing of the denial of a constitutional right" a petitioner must "demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

After reviewing the initial writ and the Objections, I find that McEntire has not met his burden of demonstrating a "substantial showing of the denial of a constitutional right." Therefore, I find that a Certificate of Appealability should not be issued on any of McEntire's grounds for habeas relief.

Accordingly,

**IT IS HEREBY ORDERED** that Jason McEntire's petition for writ of habeas corpus [#1] is **DENIED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 28th day of January, 2008.